UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

BRANDON PRINCE,

    Plaintiff,

v.                                          Civil Action No. 1:12-CV-11329

ROCK-TENN SERVICES, INC.,

    Defendant.

_____

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Rock-Tenn Services, Inc. ("Rock-Tenn"), submits the following memorandum of law in support of its Motion for Summary Judgment.

### I. PRELIMINARY STATEMENT

In his two-count Complaint, Plaintiff Brandon Prince alleges that Rock-Tenn, his former employer, violated his rights under the Massachusetts Privacy Act, G.L. c. 214, §1B and the anti-retaliation provision of the Massachusetts Worker's Compensation statute, G.L. c. 152, §75B. Plaintiff was employed as an Assistant Machine Operator at Rock-Tenn's packaging facility in Devens, Massachusetts. He claims that after suffering an alleged back injury at work, Rock-Tenn violated his privacy rights under Chapter 214 when the Plant Superintendent sat in on one appointment with the company physician to determine the extent of his injuries. Plaintiff also alleges that Rock-Tenn retaliated against him for exercising a right under Chapter 152, the workers' compensation statute. Plaintiff voluntarily resigned from his employment with Rock-Tenn on October 11, 2011.

The undisputed facts demonstrate that no reasonable juror could find in Plaintiff's favor, and that Rock-Tenn is entitled to judgment as a matter of law as to each of Plaintiff's two counts. Plaintiff's entire privacy act claim hinges on a single appointment with the company doctor during which the Plant Superintendent sat in with Plaintiff to learn whether Plaintiff's alleged back injury would prevent him from doing his job. The doctor's appointment did not extend beyond an examination of Plaintiff's back. The undisputed evidence shows that Plaintiff never asked the Superintendent to leave the appointment nor did he express any unwillingness to have him there. Because Plaintiff works with machinery in a job that requires heavy lifting, Rock-Tenn's alleged intrusion into Plaintiff's privacy was reasonably necessary to ensure Plaintiff would not cause injury to himself or others by working after his back injury. Rock-Tenn's disclosure of the information learned at the doctor's appointment was limited only to the individual supervisor who needed to obtain the medical information for safety purposes. Plaintiff cannot show, as a matter of law, that Rock-Tenn's involvement with this one doctor's appointment violated his rights under Chapter 214.

Plaintiff's claim of workers' compensation retaliation also fails as a matter of law. Plaintiff cannot show that he engaged in activity protected by the worker's compensation statute since he never even applied for workers' compensation benefits or took any affirmative steps to receive worker's compensation benefits. Moreover, the *undisputed facts demonstrate that Rock-Tenn never subjected Plaintiff to an adverse action*. Plaintiff voluntarily resigned from his employment. The record is devoid of any evidence that Rock-Tenn subjected Plaintiff to any working conditions so intolerable that his resignation could constitute a constructive discharge.

Based on the undisputed evidence, no reasonable juror could find in Plaintiff's favor on either of Plaintiff's claims. For that reason, as discussed in detail below, the Court should grant Rock-Tenn's Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

## II. FACTUAL BACKGROUND

Rock-Tenn respectfully incorporates and makes reference to its Statement of Material Facts as to Which No Genuine Issue Remains to Be Tried ("SOF"), filed herewith.[1]

## III. ARGUMENT

### A. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to a judgment as a matter of law where the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she bears burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Although a court may not weigh the evidence or make credibility determinations in granting summary judgment, the court may end a suit before trial if the court determines that, taking the facts and reasonable inferences therefrom in the light most favorable to the non-moving party, no reasonable juror could find for that party." *Taylor v. Gallagher*, 737 F.2d 134, 137 (1st Cir. 1984). Simply put, the moving party "must put the ball in play, averring an absence of evidence to support the nonmoving party's case." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks and citation omitted).

Once the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp.*, 477 U.S. at

---

[1] RockTenn accepts those facts as true for purposes of this Motion only.

324. On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[E]stablishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id*. at 247-48 (emphasis in original). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. at 248. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

      **B.**    <u>**Plaintiff's Claim That Rock-Tenn Violated His Privacy Rights Fails as a Matter of Law Because Rock-Tenn Did Not Access Information Of A Highly Personal Nature Or Disclose It Without A Legitimate Interest To Do So.**</u>

Plaintiff alleges that Rock-Tenn violated his privacy rights under Chapter 214 when the Plant Superintendent sat in on one appointment with the company appointed physician to determine the extent of Plaintiff's back injury. Chapter 214 provides, in relevant part, that: "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." G.L. c. 214, § 1B. To prevail on an invasion of privacy claim, a plaintiff must prove not only that the defendant unreasonably, substantially and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature, but also that it had no legitimate reason

for doing so. *Martinez v. New England Medical Center Hospitals, Inc*., 307 F.Supp.2d 257, 267 (D. Mass. 2004). In other words, a plaintiff must show that the defendant: 1) gathered or accessed information that is of a highly personal or intimate nature; 2) disclosed or disseminated the information; and 3) had no legitimate, countervailing interest for doing so. *See Dasey v. Anderson*, 304 F.3d 148, 153 -155 (1st Cir. 2002) (affirming entry of summary judgment for employer on invasion of privacy claim).

Courts in this jurisdiction have examined an employee's statutory right to privacy and have found that, when determining the reasonableness of an alleged intrusion, an "employer's legitimate interest in determining the employees' effectiveness in their jobs should be balanced against the seriousness of the intrusion on the employees' privacy." *Dasey,* 304 F.3d at 154 (citations omitted). "An employer thus may seek certain personal information concerning an employee when the importance of the information in assessing the employee's efficacy in his work outweighs the employee's right to keep his information private." *Bratt v. Internat'l Business Machines Corp*., 392 Mass. 508, 520 - 21 (1984). This same balancing test applies if the information disclosed about the employee is medical information. *Bratt*, 392 Mass. at 510. "A physician retained by the employer may disclose to the employer medical information concerning an employee if receipt of the information is reasonably necessary to serve a substantial and valid business interest of the employer." *Id*. An employer's interest in aspects of an employee's health that could affect the employee's ability to effectively perform his job duties falls within this scope. *Id*. (citing *Pitcher v. Iberia Parish School Bd*., 280 So.2d 603, 608 (La. Ct. App. 1973); *Clark v. Geraci*, 29 Misc.2d 791, 793 (N.Y. 1960)). In evaluating privacy claims, a court will consider the degree of sensitivity of the medical information that is disclosed,

as well as the number of individuals to whom the information is disclosed. *Bratt v. Internat'l Business Machines Corp.*, 785 F.2d 352, 360 (1st Cir. 1986).

In *Bratt*, the United States Court of Appeals for the First Circuit affirmed the District Court's ruling that the employer did *not* violate the plaintiff's rights under Chapter 214 by disclosing a memorandum recounting the company physician's opinion that the plaintiff was "paranoid" and had a "mental problem," where the four (4) individuals who received the memorandum were managerial employees responsible for evaluating the employee's complaints. *Id.* Other courts in this jurisdiction routinely have found that where an employee's medical information may impact the safety of the employee, other employees, or the public, an employer does not violate the employee's rights under Chapter 214 by disclosing said information. *See, e.g.*, *Carmack v. Nat'l R.R. Passenger Corp.*, 486 F. Supp. 2d 58, 81 (D. Mass. 2007) (company's proposed psychiatric evaluation was reasonable and would not infringe upon plaintiff's privacy rights where the primary purpose of the evaluation was to assess a potential threat to safety to the plaintiff or others); *O'Connor v. Police Com'r of Boston*, 408 Mass. 324, 330 (1990) (the police department's compelling interest in determining whether police cadets were using drugs outweighed the cadets' privacy interest in avoiding unannounced urinalysis tests for which sample collection was observed by police personnel); *Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 393 - 96 (1994) (drug testing that included visual inspection by medical professional was reasonable given the nature of the tool manufacturer's business, the potential for harm to employees and customers, the evidence of employee drug use, and safeguards to protect employee privacy); *Webster v. Motorola, Inc.*, 418 Mass. 425, 433 (1994) (employer's legitimate business interests outweighed account executive's privacy interest when employer required the employee to undergo a urinalysis drug test, where the employee was

responsible for operating a company vehicle thereby implicating his own safety as well as the safety of others).

Plaintiff's entire claim under Chapter 214 hinges on a single appointment with the company-appointed physician on September 28, 2011, during which Plant Superintendent Robert McMonigle sat in on Plaintiff's examination. On September 28, 2011, Plaintiff reported to Rock-Tenn that he needed to see a doctor after allegedly injuring his back during his shift the previous night. (Defendant's Statement of Material Facts as to which no Genuine Issue Remains to be Tried ("SOF") at ¶¶ 25 – 26). Steven LeBlanc, Rock-Tenn's Human Resources Manager, asked Plaintiff to come into work so that Plaintiff could be brought to an appointment with the Rock-Tenn physician, Dr. Robert Voight, at Nashoba Valley Medical Center in Ayer, Massachusetts.[2] *Id*. at ¶¶ 26, 28. Mr. McMonigle drove Plaintiff to the doctor's appointment and sat in on Plaintiff's appointment with Dr. Voight. *Id*. at ¶ 29. Plaintiff did not complain to anyone that Mr. McMonigle sat in on it, nor did Plaintiff ask Mr. McMonigle to step outside. *Id*. at ¶ 30. The appointment lasted less than twenty (20) minutes and was limited to an examination of Plaintiff's back. *Id*. at ¶¶ 32, 34. Dr. Voight did not ask Plaintiff to undress or take off his shirt, nor was Plaintiff's medical history discussed in Mr. McMonigle's presence. *Id*. at ¶ 33. Dr. Voight released Plaintiff for regular work. *Id*. at ¶ 35.

After the doctor's appointment, Mr. McMonigle drove Plaintiff back to Rock-Tenn's premises. Mr. McMonigle reported to Plant Manager Mark Wilson that "[e]verything is good." *Id*. at ¶ 36. In other words, Mr. McMonigle informed Mr. Wilson that Plaintiff was deemed fit to return to regular duty work by Dr. Voight. Mr. McMonigle shared the information with Mr. Wilson because Mr. Wilson was Mr. McMonigle's supervisor and because Mr. Wilson was

---

[2] Plaintiff had the option of seeing a doctor of his choosing, but went to Rock-Tenn's doctor because costs associated with those visits were covered by the company. SOF at ¶ 27.

ultimately responsible for knowing if Mr. Prince could safely continue to perform his usual job functions. *Id.* at ¶ 37. The record unequivocally shows that Plaintiff worked with large machinery, and his job required frequent heavy lifting. *Id.* at ¶ 5. Mr. Wilson reasonably needed to know whether Plaintiff had a back injury that would prevent him from performing his work, or would put himself or others at risk if Plaintiff performed his normal job functions. *Id.* at ¶ 37. Mr. McMonigle did not share any information about Plaintiff's doctor's appointment with anyone else at Rock-Tenn beside Mr. Wilson. *Id.* at ¶ 38. Although Plaintiff went to additional follow up appointments with Dr. Voight, the record shows that no individual from Rock-Tenn sat in on any of these other appointments.[3] *Id.* at ¶¶ 40, 47, 50.

Plaintiff cannot demonstrate that Rock-Tenn violated his rights under Chapter 214 by taking him to the company physician. Plaintiff was aware of and expressly agreed to Rock-Tenn's policy regarding appointments with the company physician after a work-related injury. *Id.* at ¶¶ 10 -11, 14 – 16. Indeed, Plaintiff signed a policy containing the following language: "The company has the right to take the employee to the company's medical provider for initial examination and treatment." *Id.* at ¶ 15. Further, Plaintiff acknowledged receipt of Rock-Tenn's company handbook, which states in relevant part that "[Rock-Tenn] may [] require that some current employees have periodic medical examinations. The medical examination is to help make sure employees can perform their duties, for example." *Id.* at ¶¶ 10 – 11. Rock-Tenn did not preclude Plaintiff from making an appointment with his regular physician. Plaintiff was informed, however, that Rock-Tenn would only cover the cost of an appointment with its company physician. *Id.* at ¶ 27. As such, Plaintiff elected to proceed to meet with Dr. Voight in order to have Rock-Tenn cover the expense of the appointment.

---

[3] RockTenn understands from Plaintiff's Complaint that these other appointments do not form the basis of his Chapter 214 claim.

As a matter of law, Plaintiff cannot prevail on his claim under Chapter 214 based on Rock-Tenn's involvement with his September 28, 2011 appointment with Dr. Voight. As the Plant Superintendent of a company at which employees utilize large machinery and regularly lift heavy items, Mr. McMonigle had a legitimate business interest in knowing whether Plaintiff's alleged work injury would prevent him from safely continuing to perform his job. *See Folmsbee*, 417 Mass. at 393 (legitimate business interest exists where the job requires "extreme alertness and precision" … and where a "slight error could result in serious harm to both employees and customers"). The extent of the intrusion into Plaintiff's privacy was minor where the physical examination was limited to the alleged injury, and Plaintiff was not required to undress or share any medical history. Moreover, Mr. McMonigle's disclosure of medical information was limited to one (1) individual, Mr. Wilson, who would be involved in the decision of whether to return Plaintiff to his regular work. Although a disclosure to a single co-worker could in some circumstances give rise to a viable invasion of privacy claim, that is not the situation in this case where Mr. McMonigle relayed only the information that was necessary to allow Mr. Wilson to make a determination about Plaintiff's fitness for duty. *See Bratt*, 785 F.2d at 519; *Dasey*, 304 F.3d at 153-55.

As a matter of law, Rock-Tenn's legitimate interest in determining the safety and effectiveness of Plaintiff's continued work after his injury outweighed the intrusion on Plaintiff's privacy caused by Mr. McMonigle sitting in on his appointment with the company physician. The factual record clearly shows that the alleged intrusion into Plaintiff's privacy interests was not unreasonable, substantial or serious. *See Martinez*, 307 F.Supp.2d at 267. Moreover, the uncontested facts demonstrate that Rock-Tenn had a legitimate reason for obtaining medical

information about Plaintiff's work-related injury. Accordingly, Plaintiff's claim under Chapter 214 fails as a matter of law, and the entry of summary judgment on this claim is warranted.

    **C.**    **Plaintiff's Claim Of Workers' Compensation Retaliation Fails As A Matter Of Law Because Plaintiff Did Not Engage In Any Protected Activity Or Suffer Any Adverse Employment Action.**

Plaintiff's claim of retaliation under the worker's compensation statute also fails as a matter of law. Chapter 152 provides that employer shall not discharge an employee for exercising any right under the worker's compensation act. G.L. c. 152, § 75(B)(2); *see Mercado v. Manny's T.V. & Appliance, Inc.*, 77 Mass. App. Ct. 135, 144 (2010) (employee's retaliation claim failed where the employee took no action under the act until after he was terminated, and offered no evidence of causation beyond the timing of the termination). To establish a *prima facie* case of retaliation under Chapter 152, Plaintiff must establish that: 1) he engaged in an activity protected by the Workers' Compensation Act, 2) Rock-Tenn was aware of that protected activity, 3) Rock-Tenn thereafter took an adverse employment action against Plaintiff and 4) but for Plaintiff's activity, Rock-Tenn would not have taken such an adverse employment action. *Canfield v. Con-Way Freight, Inc.*, 578 F. Supp. 2d 235, 242 (D. Mass. 2008) *(citing Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 177 n. 5 (1st Cir. 2003)). If Plaintiff establishes his *prima facie* case, the burden shifts to Rock-Tenn to offer lawful grounds for the adverse employment action. If Rock-Tenn meets this burden, the burden shifts back to the plaintiff to show that the proffered grounds are pretextual. *Stella v. North Reading Transp.*, No. 2008-02066-A, 2010 WL 4738684 (Mass. Super. Mar. 17, 2010) (trial order) (citing *Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 128, 686 N.E.2d 1303 (1997)).

Here, Plaintiff sustained his alleged injury in the early morning hours of September 27, 2011. SOF at ¶ 18. On September 29, 2011, Mr. LeBlanc prepared the "Employer's First

Report of Injury or Fatality" regarding Plaintiff's alleged injury and submitted it to Sedgwick, the Third Party Claims Administrator. *Id*. at ¶ 66. The undisputed evidence shows that Plaintiff never submitted a claim for worker's compensation benefits or took any steps to begin that process. Plaintiff continued working with light duty restrictions through October 7, 2011. [4] *Id*. at ¶ 59. He never requested a leave of absence for his alleged injury, nor was one recommended by Dr. Voight. *Id*. at ¶ 67. Plaintiff was released to light duty work, which Rock-Tenn accommodated. Id. at ¶ 42. None of Plaintiff's follow up doctor's appointments conflicted with his work schedule. *Id*. at ¶¶ 44, 48. Nonetheless, Plaintiff was a "no call/no show" for his scheduled shifts on October 10 and October 11, 2011. *Id*. at ¶¶ 60 – 61.

While Plaintiff's testimony was vague on this point, the earliest date on which he informed Rock-Tenn that he was interested in worker's compensation leave was October 4, 2011, when he told Mr. LeBlanc that Mr. St. Germaine was not accommodating his restrictions. *Id*. at ¶¶ 52-53. Mr. LeBlanc said he would look into it, and Plaintiff has no evidence to suggest that Mr. LeBlanc did not indeed follow through. *Id*. at ¶¶ 54 – 55. Sometime thereafter, Mr. St. Germaine asked Plaintiff to pick up loose trash during his shift and Plaintiff believed this violated his work restrictions. *Id*. at ¶ 57. Plaintiff claims that he asked Mr. LeBlanc about worker's compensation benefits again on October 11, 2011, four days after Mr. St. Germaine had asked him to pick up trash during his shift. *Id*. That same day, before Mr. LeBlanc could take any action, Plaintiff drafted his letter of resignation to Rock-Tenn. *Id*. at ¶¶ 62 – 63. As a result of this letter, his employment with Rock-Tenn ended effective October 11, 2011. *Id*. at ¶ 65. Plaintiff did not wait to see whether Mr. St. Germaine would staff him on other light duty work beside trash pick-up in response to his complaint to Mr. LeBlanc. *Id*. at ¶ 58. On November 4,

---

[4] At appointments following the September 28, 2011 appointment, Dr. Voight placed Plaintiff on light duty. SOF at ¶¶ 46, 49.

2011, an Insurer's Notification of Denial was issued, stating the following grounds for denial: no personal injury, no injury arising out of and in the course of employment, and no causal relationship between personal injury and disability. *Id*. at ¶ 69. Plaintiff did not appeal the denial. *Id*. at ¶ 70.

As an initial matter, Plaintiff cannot meet his *prima facie* burden because he cannot show that he engaged in activity protected by the worker's compensation statute. "Merely telling one's employer that one has been injured, in the absence of filing any claim for workers' compensation or even signaling to the employer any intent to seek workers' compensation, is not the exercise of a right afforded by the Workers' Compensation Statute." *Piderit v. Siegal & Sons Investments, Ltd.*, No. 962217, 1998 WL 1181187, at *2 (Mass.Super. Aug. 19, 1998). In *Gauthier v. Sunhealth Specialty Servs. Inc.*, the Court granted the employer's motion for summary judgment on the worker's compensation retaliation claim where the employee was found to have a "complete lack of involvement" in the worker's compensation claim process. 555 F. Supp. 2d. 227, 245 (D. Mass. 2008). The employer filed a claim on the employee's behalf, and while the employee was aware that said claim was filed, she "did nothing at all to assert her rights" under the relevant statute. *Id*. The Court noted that "surely some bare minimum of action by the plaintiff is required" to constitute protected activity under Chapter 152. *Id*.

Plaintiff informed Rock-Tenn that he was injured on the job. SOF at ¶ 25. Rock-Tenn then completed and submitted the Employer's First Report of Injury on September 29, 2011. *Id*. at ¶ 66. Beyond that, at most, the evidence shows that Plaintiff fleetingly referenced workers' compensation benefits to Mr. LeBlanc in the context of conversations about whether Mr. St.

Germaine was accommodating his restrictions.[5] *Id*. at ¶ 52. Regardless, the undisputed evidence shows that Plaintiff never filed a claim for worker's compensation benefits or took any affirmative steps to receive worker's compensation benefits.

Even if Plaintiff could show that he engaged in protected activity, which Rock-Tenn denies, his *prima facie* case still fails because he cannot show that he suffered an adverse employment action. "To rise to the level of an adverse employment action, an action must *materially change* the conditions of a plaintiff's employment." *Armery v. Potter*, 497 F. Supp. 2d 134, 141 (D. Mass. 2007) (emphasis added). "An adverse employment action is one that affects 'wages, bonuses, benefits or ability to perform [his] duties.'" *Boutin v. Home Depot U.S.A., Inc.*, 490 F. Supp. 2d 98, 107 (D. Mass. 2007) (*quoting Swallow v. Fetzer Vineyards,* 46 Fed. Appx. 636, 646 (1st Cir. 2002); *see also Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998) (an "adverse employment action" includes "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees"). "As the First Circuit has observed, '[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" *Rafalski v. Donahoe*, 10-CV-40060-TSH, 2012 WL 4753274, at *6 (D. Mass. Oct. 3, 2012) (*quoting Blackie v. Maine,* 75 F.3d 716, 725 (1st Cir. 1996)). "Subjective feelings of disappointment and disillusionment" are insufficient evidence of an adverse employment action. *MacCormack v. Boston Edison Company*, 423 Mass. 652, 662-63 (1996).

---

[5] At deposition, Plaintiff contradicted himself numerous times as he tried to explain when he raised workers' compensation benefits. Plaintiff does not clearly pinpoint the dates on which he spoke to Mr. LeBlanc, nor does he explain his reason for believing he was entitled to worker's compensation benefits when his doctor released him to light duty work.

Although the deposition testimony is not clear, Plaintiff may attempt to suggest that Mr. St. Germaine subjected him to an adverse employment action by asking him to pick up trash, which Plaintiff found to be insulting and outside his light duty restrictions. Plaintiff cannot defeat summary judgment by showing that his supervisor asked him to perform an unsavory task, as this falls far short of the threshold of an adverse employment action. Plaintiff did not report his complaint about the trash assignment until October 11, 2011, four (4) days after it happened, and on the same day that he decided to resign. SOF at ¶ 57. The timing of Plaintiff's resignation precluded Rock-Tenn from investigating or modifying the assignment.

Moreover, the record unequivocally shows that Plaintiff *voluntarily* resigned. *Id*. at ¶¶ 62 – 65. Plaintiff does not, and cannot, argue that Rock-Tenn terminated his employment. Nor can Plaintiff show that his resignation amounted to a constructive discharge. "To take the measure of a claim of constructive discharge, an inquiring court must gauge whether the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir. 2000) (citing *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993)). The First Circuit stated:

> "This standard cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held. The ultimate test is one of objective reasonableness. The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world. Thus, the constructive discharge standard, properly applied, does not guarantee a workplace free from the usual ebb and flow of power relations and inter-office politics.

*Suarez*, 3. F.3d at 480 (citations omitted)."

As noted, Plaintiff did not complain about the trash issue until the same day that he decided to resign. SOF at ¶ 57. This one unpleasant task does not give rise to a basis for

constructive discharge. Plaintiff vaguely recalled informing Mr. LeBlanc on or about October 4 that Mr. St. Germaine was not adhering to his restrictions. *Id*. at ¶¶ 52 – 53. Mr. LeBlanc responded that he would take care of it, and Plaintiff has no evidence that Mr. LeBlanc did not address it with Mr. St. Germaine. *Id*. at ¶ 54. Plaintiff continued working several more shifts. *Id*. at ¶ 59. In short, Plaintiff cannot as a matter of law show that his working conditions had become so onerous, abusive, or unpleasant after he engaged in protected activity that a reasonable person in his position would have felt compelled to resign. *See Suare,* 229 F.3d at 54. As such, he cannot demonstrate that his resignation constituted a constructive discharge.

The only evidence that Plaintiff uses in support of his retaliation claim is the temporal proximity between his injury and his resignation. Mere temporal proximity between the injury or protected activity and the termination, without more, will not sustain a worker's compensation retaliation claim. *See Piderit v. Siegal & Sons Invs., Ltd.,* 55 Mass. App. Ct. 1, 5–6 (2002) (affirming summary judgment for employer where the fact that the employer fired the employee shortly after his injury was insufficient by itself to show causal connection when worker's compensation claim filed after termination); *Gil v. Vortex, LLC*, 697 F. Supp. 2d 234, 243 (D. Mass. 2010) (granting employer's motion to dismiss on worker's compensation retaliation claim); *Mercado*, 77 Mass. App. Ct. at 144.

As the uncontested evidence shows that Plaintiff failed to engage in protected activity and failed to demonstrate an adverse employment action, his claim under Chapter 152 fails as a matter of law. Summary judgment should enter on this claim.

## IV. CONCLUSION

For the reasons set forth above, Rock-Tenn respectfully requests that its Motion for Summary Judgment be granted in its entirety, and that Plaintiff's Complaint be dismissed with prejudice, and for other such and further relief as this Court deems appropriate.

Respectfully submitted,

                                            Rock-Tenn Services, Inc.

                                            By its attorneys,


                                            /s/ Laura E. Ogden
                                            Tracy Thomas Boland (BBO# 638878)
                                            Laura E. Ogden (BBO# 663070)
                                            Morgan, Brown & Joy, LLP
                                            200 State Street, 11th Floor
                                            Boston, MA 02109
                                            (617) 523-6666
                                            fax: (617) 367-3125
                                            tboland@morganbrown.com
                                            logden@morganbrown.com

Dated:  September 24, 2013



**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 24, 2013.


                                            /s/ Laura E. Ogden
                                            Laura E. Ogden